UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELVIN J. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-CV-00345-NCC |
| ) | |
| CITY OF ST. LOUIS, MO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

This matter is before the Court on Defendant's second Motion to Dismiss (Doc. 34). Defendant filed a Memorandum in Support (Doc. 35). The Court ordered self-represented Plaintiff Kelvin J. Jones to respond (Doc. 38). No response was filed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 16). For the following reasons, Defendant's Motion will be **GRANTED in part** and **DENIED in part**.

## I. Background

The operative Equal Employment Opportunity Commission (EEOC) charge in this case was filed by Plaintiff on June 2, 2023 (Doc. 35-1).[1] The charge alleges violations of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA)

---

[1] The Court will consider Plaintiff's operative EEOC charge, filed as an attachment to the Memorandum in Support of Defendant's second Motion to Dismiss. *See Brooks v. Charter Commc'ns (De), LLC*, No. 4:16CV01496 AGF, 2017 WL 345079, at *2 (E.D. Mo. Jan. 24, 2017) (citing *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (holding in an employment discrimination case that a court may consider, on a motion to dismiss, the administrative charge attached as an exhibit in support of the defendant's motion to dismiss, because the charge is a public record)).

(*id.*).  Specifically, Plaintiff alleges that he was subjected to age-based comments, that he mentioned his disability on August 3, 2022, and that he was informed he was discharged on August 4, 2022 (*id.*).

On March 6, 2024, Plaintiff filed a complaint with this Court alleging violations of Title VII, the ADEA, the ADA, and the Rehabilitation Act (Doc. 1).  Defendant filed a first Motion to Dismiss (Doc. 13), arguing that Plaintiff's claims should be dismissed because the Neighborhood Stabilization Team[2] was not a suable entity, and for Rule 8 violations and failure to state a claim due to the complaint's lack of clarity.  The Court allowed Plaintiff to amend his complaint (Doc. 22).  When Plaintiff failed to file his amended complaint, the Court set the matter for a status conference (Doc. 25).  At the status conference, the Court granted Plaintiff additional time to amend (Docs. 26, 27).

On September 3, 2024, Plaintiff filed his amended complaint, alleging violations of the ADEA, the ADA, and the Rehabilitation Act based on events culminating with his termination on August 4, 2022 (Doc. 30).  On September 24, 2024, Defendant filed a second Motion to Dismiss (Docs. 34, 35).  This time, Defendant also argued that Plaintiff failed to exhaust his administrative remedies because his EEOC charge was not filed within the 300-day time limit (Doc. 35 at 4).

## II.  Analysis

### A.  ADA and ADEA Claims

Defendant argues that Plaintiff failed to exhaust his administrative remedies because his EEOC charge was not filed within the 300-day time limit (Doc. 35 at 4).  The Court agrees, but only as to Plaintiff's ADA and ADEA claims.

---

[2] The Neighborhood Stabilization Team was originally named as a defendant (Doc. 1).  In Plaintiff's amended complaint, he names the City of St. Louis, MO (Doc. 30).

2

Before a plaintiff may file a complaint in federal court alleging violations of the ADA[3] or ADEA, he must first exhaust his administrative remedies. Exhaustion is accomplished by filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *Smith v. Hammer & Steel, Inc.*, No. 4:22-CV-01128-AGF, 2023 WL 3200294, at *3 (E.D. Mo. May 2, 2023) (300-day filing deadline for ADA and ADEA claims). The limitations period "begins to run at the time of the discriminatory act, and not when the consequences of the act become most painful." *Conner v. Reckitt & Colman, Inc.*, 84 F.3d 1100, 1102 (8th Cir. 1996) (analyzing ADA action).

Here, the latest discriminatory act Plaintiff alleges, his termination, occurred on August 4, 2022. *See Conner*, 84 F.3d at 1102 (noting that "[the plaintiff's] employment relationship with Reckitt & Colman ended when she was fired" and so "Reckitt & Colman cannot continue to discriminate against [the plaintiff] when it no longer employs her"). Plaintiff's EEOC charge was not filed until June 2, 2023, 302 days later. While Plaintiff's amended complaint entirely replaced the original one, the Court notes that the November 18, 2022 pre-charge inquiry (Doc. 1-2) attached to Plaintiff's original complaint could not have served as an earlier-filed charge of discrimination. *See, e.g., Kindred v. Memphis Light Gas & Water*, 2021 WL 6752163, at *4–5 (W.D. Tenn. Dec. 6, 2021) (finding pre-charge inquiry cannot suffice as a charge of discrimination and listing cases), *report and recommendation adopted*, 2022 WL 989478 (W.D. Tenn. Mar. 31, 2022), *aff'd* 2023 WL 3158951 (6th Cir. Feb. 27, 2023). Thus, Plaintiff's charge was filed outside of the 300-day limitations period.

---

[3] While Title II of the ADA does not contain an exhaustion requirement, this Court has held that Title II does not apply to employment discrimination. *See McDonald v. Missouri Dep't of Corr.*, No. 4:24-CV-00361-JAR, 2024 WL 3566634, at *4 (E.D. Mo. July 29, 2024) ("While the Eighth Circuit has not directly addressed this issue, the Court finds that the majority of federal circuits that have are in agreement that claims of discrimination in public employment are not properly raised under Title II.").

The limitations period is subject to equitable tolling. *Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir. 1995). A party must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Walker v. Norris*, 436 F.3d 1026 (8th Cir. 2006). Equitable tolling is generally applied when circumstances were "truly beyond the control of the plaintiff." *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989). Here, Plaintiff failed to file a response to Defendant's second Motion to Dismiss as ordered by the Court and has not set forth any grounds for equitable tolling. The Court finds that Plaintiff's ADA and ADEA claims are time-barred.

**B. Rehabilitation Act Claims**

Defendant entirely fails to address the fact that Plaintiff also asserts violations of the Rehabilitation Act. *See* Doc. 30 at 2; Docs. 34, 35. There is no exhaustion requirement when a plaintiff sues a non-federal employer. *See Miener v. State of Mo.*, 673 F.2d 969, 978–79 (8th Cir. 1982) (concluding that suits under § 504 of the Rehabilitation Act "appropriately may be maintained in advance of the exhaustion of administrative remedies" in case against State of Missouri and its officials and agencies); *Morgan v. U.S. Postal Serv.*, 798 F.2d 1162, 1165 (8th Cir. 1986) ("In [§ 504] cases where the federal government is not a defendant, several courts have held that exhaustion is not required because Title VI remedies do not provide individual relief.") (citing *Meiner,* 673 F.2d at 978); *Luetkemeyer v. Columbia Pub. Sch.*, No. 4:13-CV-1110 CEJ, 2013 WL 5707859, at *2 (E.D. Mo. Oct. 21, 2013) ("[A]n action against a non-federal employer under the Rehabilitation Act does not require exhaustion of administrative remedies.") (quoting *Morales v. Ga. Dep't of Human Res.*, 446 Fed. Appx. 179, 181 (11th Cir. 2011)). Thus, Plaintiff's Rehabilitation Act claims will not be dismissed for failure to exhaust administrative remedies. *See Luetkemeyer*, 2013 WL 5707859 at *2 (declining to dismiss Rehabilitation Act claim where motion to dismiss did not specifically address the claim).

4

However, Defendant also argues that Plaintiff's disability claims should be dismissed for failure to state a claim (Doc. 35 at 6).  Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must show "'that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012).  "A *pro se* complaint must be liberally construed, and *pro se* litigants are held to a lesser pleading standard than other parties."  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal quotations and citation omitted).  This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal

5

framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to "allege facts which, if true, state a claim for relief as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability, solely by reason of his disability. *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). To establish disability discrimination under the Rehabilitation Act, Plaintiff must show that he (1) was disabled, (2) was qualified to do the essential functions of his job, and (3) suffered an adverse employment action because of his disability. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). The Rehabilitation Act incorporates the standards of the ADA to determine whether a violation has occurred. 29 U.S.C. § 794(d); *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). Decisions under the Rehabilitation Act or the ADA "are applicable and 'interchangeable' to claims under each statute." *Hill*, 737 F.3d at 1216.

Defendant argues that Plaintiff fails to allege a sufficient disability (Doc. 35 at 6-7). The Court disagrees. The threshold question in a disability discrimination case is whether the plaintiff is "disabled" within the meaning of the ADA. *Heisler v. Metropolitan Council*, 339 F.3d 622, 627 (8th Cir. 2003). A plaintiff therefore "must first make a facial showing that [s]he has an ADA disability." *Fenney v. Dakota, Minnesota & Eastern R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003); *see, e.g., Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001) ("Because [plaintiff] has not met the first element of actual or perceived disability of a prima facie case under the ADA, she is not entitled to protection under the ADA.").

The Rehabilitation Act uses the same definition as the ADA for an individual with a disability. 29 U.S.C. § 705(20)(B). The term "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment[.]" 42 U.S.C. § 12102(2)(A)–(C); *Canny v. Dr. Pepper/Seven–Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006).  Major life activities include but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).

In his amended complaint, Plaintiff alleges as follows.  On August 2, 2022, Plaintiff and others were enlisted to canvas related to flooding in the Norwood Avenue area (Doc. 30 at 7-8).  With a temperature of 95 degrees and a heat index of over 100 degrees, he explained to a supervisor Sandra Zambrana that, "[he] was 100% disabled and couldn't do the walking … in the heat" (Doc. 30 at 9).  He showed Zambrana "x-rays of my right hip [he] had on my phone to prove my disability" (*id.*).[4]  In an attachment to his amended complaint,[5] Plaintiff asserts that Exhibit Z—medical documents from 2023 describing osteoarthritis in Plaintiff's right hip—"identifies [his] physical and mental impairments that substantially limited one or more major life activities" (Doc. 30-2 at 2; Doc. 30-29).[6]  As to his right hip, he further asserts osteoporosis and a misalignment that was later corrected with a hip replacement (Doc. 30-2 at 2).  The same attachment alleges that, during the flood response, he had difficulty lifting heavy pallets by

---

[4] The Court notes that elsewhere, Plaintiff states an x-ray was shown to Zambrana on or about July 15th or 18th, 2022 (Doc. 30-2 at 2).

[5] Given Plaintiff's self-represented status, the Court will consider allegations contained in attachments to his amended complaint.  *See Cooper v. Schriro*, 189 F.3d 781, 783–84 (8th Cir. 1999) (per curiam) (treating facts alleged in attachment to pro se complaint as part of complaint); *Murphy v. Unknown*, No. 1:24-CV-00173-HEA, 2024 WL 5262866, at *2 (E.D. Mo. Dec. 31, 2024) ("In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits.").

[6] Plaintiff mentions other disabilities.  *See* Doc. 30-2 at 3.  However, he does not allege that any of those other disabilities played a role in the discrimination against him.  *See* Docs. 30, 30-2.

7

himself and that sitting all day on metal chairs that were provided caused tremendous pain to his hip (*id.* at 3). Plaintiff has sufficiently alleged a disability within the meaning of the ADA. *See, e.g., Medlock v. City of St. Charles*, 89 F. Supp. 2d 1079, 1082 (E.D. Mo. 2000) (denying dismissal where plaintiff alleged that her diabetes mellitus substantially limited sitting and seeing, that her fatigue caused blurred vision, and that she experienced numbness and swelling if she sat for a long period of time).[7]

Defendant further argues that Plaintiff fails to allege that Defendant took any adverse action, such as termination, on account of his right hip (Doc. 35 at 7). The Court disagrees. Plaintiff alleges that after he told Zambrana about his right hip and that he could not walk in the heat, he was "demoted," "told that [he] wouldn't be working on behalf of NST anymore," and "forced to work as a volunteer intake person for a company called … Behavioral Health Response" (Doc. 30 at 9). He further alleges that the next day, another supervisor Heather Taylor told him he couldn't leave and had a former correctional officer guard him, and that, two days later, he was told by supervisors Zambrana and Bernie Powderly to turn in his computer and equipment and was fired (*id.*). Given Zambrana's personal involvement in Plaintiff's notification of his disability, demotion, and termination, all of which occurred over the course of just two days, Plaintiff has sufficiently alleged that Defendant took adverse action because of his right hip disability. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002) ("[P]roximity of a 'matter of weeks' between disclosure of a potentially disabling condition and adverse employment action was sufficient to complete a prima facie case of discrimination.") (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113–14 (8th Cir.

---

[7] Defendant argues that "Plaintiff alleges throughout his Complaint that he has spent the last several months canvassing and walking outside as part of his job duties" (Doc. 35 at 8). That is not an accurate description of Plaintiff's amended complaint (Doc. 30). While Plaintiff describes fulfilling various job duties, including as part of the flood response, he does not specify

2001)).  Thus, Plaintiff has stated a claim for discrimination because of his disability under the Rehabilitation Act.

Defendant further argues that Plaintiff fails to state a claim for retaliation (Doc. 35 at 13). The Court disagrees.  "'[A] person who is terminated after making a goodfaith request for an accommodation may pursue a retaliation claim under the ADA and the Rehabilitation Act, although the textual basis for these claims is unclear.... In any event, ... retaliation claims under the two statutes [are treated] interchangeably.'" *Tomshack v. Wilkie*, 584 F. Supp. 3d 740, 751 (D.S.D. 2022) (quoting *Withers v. Johnson*, 763 F.3d 998, 1004 (8th Cir. 2014)); *see also Powley v. Rail Crew Xpress, LLC*, 25 F.4th 610, 612–13 (8th Cir. 2022) ("[A plaintiff] need not request an accommodation in writing or use the magic words 'reasonable accommodation,' but must make clear that the employee wants assistance for her disability.") (internal quotations omitted).

Plaintiff alleges that two days before he was fully terminated, he informed Zambrana he was disabled, showed her x-rays, and requested not to walk in the heat (Doc. 30 at 9).  He also alleges that at some point during the two to three weeks that he worked with Zambrana during the flood response, he requested a cushioned chair and help lifting heavy pallets, and that "adverse employment actions" were taken against him as a result (Doc. 30-2 at 3).  Thus, Plaintiff has also stated a claim for retaliation under the Rehabilitation Act.  *See Ernst v. Wal-Mart Stores, Inc.*, No. 4:17CV2514 HEA, 2018 WL 2087254, at *3 (E.D. Mo. May 3, 2018) (finding temporal proximity of plaintiff's accommodation request (December 28, 2016) and his termination (January 4, 2017) sufficient to state a claim for retaliation); *see also Hutson v. Covidien, Inc.*, 654 F. Supp. 2d 1014, 1023–24 (D. Neb. 2009) ("The close temporal connection between [plaintiff's] accommodation request and his termination the following day demonstrates that genuine issues of material fact remain regarding whether [defendant's] proffered reason for

---

that he was canvassing and walking.  *See id*.

firing him … was pretextual."); *Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 656 (8th Cir. 2023) (noting that, in retaliation cases, "when the temporal proximity is 'very close,' temporal proximity alone may be 'sufficient to create an inference of the causal link.'") (quoting *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 (8th Cir. 2012)).

Finally, Defendant argues that Plaintiff fails to state a claim for failure to accommodate (Doc. 35 at 7). Again, the Court disagrees. To establish a prima facie case for failure to accommodate his disability, a plaintiff must show the following elements:

1) the employer knew about the employee's disability;

2) the employee requested accommodations or assistance for his disability;

3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and

4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015) (citing *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009)). Plaintiff alleges that he informed Zambrana of his disability. *See* Doc. 30 at 9; Doc. 30-2 at 2-3. As set forth above, he alleges that he requested accommodations in the form of not walking in the heat, help lifting heavy pallets, and a cushioned chair. *See* Doc. 30 at 9; Doc. 30-2 at 3. He alleges that Zambrana ignored his requests. *See* Doc. 30 at 9; Doc. 30-2 at 2-3. And he alleges that he could have been accommodated but for his employer's lack of good faith. *See* Doc. 30-2 at 2. Plaintiff has stated a claim for failure to accommodate under the Rehabilitation Act.[8]

---

[8] Plaintiff has not stated a claim, however, for a hostile work environment under the Rehabilitation Act. The bulk of the harassment Plaintiff asserts relates to his age and occurred before he informed Zambrana of his disability. *See* Docs. 30, 30-2; *see also Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013) ("Hostile work

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's second Motion to Dismiss (Doc. 34) is **GRANTED in part** and **DENIED in part**.  Plaintiff's Rehabilitation Act claims for discrimination, retaliation, and failure to accommodate will be allowed to proceed.  All other claims are **DISMISSED**.

Dated this 18th day of February, 2025.

                                                /s/ Noelle C. Collins
                                                NOELLE C. COLLINS
                                                UNITED STATES MAGISTRATE JUDGE

---

environment harassment occurs 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)), *abrogated on other grounds as noted by Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024).